UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN and JANE ROE, | ) | CASE NO. 4:05CV635 |
| As Parents and Custodian of Johnny Roe, | ) | |
| a Minor, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MAHONING COUNTY, OHIO, et al., | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

The above captioned case is before the undersigned on the motions of Defendants Eva Burris, Rollen Smith, Austin Kennedy, and Mahoning County (collectively "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56(c).  ECF Dkt. #s 40, 42.  Plaintiffs John and Jane Roe, the parents and custodians of minor Johnny Roe ("Roe") (collectively "Plaintiffs"), have filed motions in opposition.  ECF Dkt. #s 57, 58.

For the following reasons, the Court GRANTS the motion for summary judgment in favor of Defendants' Burris, Smith and Kennedy and also DISMISSES Mahoning County for reasons other than stated in its motion for summary judgment.  The Court DENIES Mahoning County's motion for summary judgment as MOOT for the reasons stated hereafter.  ECF Dkt. #s 40, 42.

**A.     FACTS AND PROCEDURAL HISTORY**

In February of 2004, Plaintiff Johnny Roe ("Roe") was incarcerated at the Mahoning

1

County Juvenile Justice Center ("JJC") for probation violations.[1] This was the third time Roe had been incarcerated at the JJC. *See* ECF Dkt. #44 ("Roe Deposition") at 94. Roe was initially placed in a holding cell and then transferred to an isolation cell in Lynch Hall after about two days. *Roe Deposition* at 84-88. His cell mate, another juvenile offender, Defendant Jimmy Coe ("Coe") was present in the cell in Lynch Hall when Roe arrived. *Id.* at 98-99. On or about February 26, 2004, shortly after the lights were turned off for the evening, Roe was lying on his cot when Coe returned to the cell and laid on his cot. *Id.* at 113-114; 116. Roe was sleeping on his stomach in his underwear and using his shirt as a pillow. *Id.* at 117. Roe was awakened by Coe who had pinned Roe to the cot from behind, pulled his underwear down and was attempting to engage in anal sex with him. *Id.* at 117, 123-124. Roe tried to free himself by rolling over and away from Coe, but was unable to remove Coe from his position. *Roe Deposition* at 126-7. However, presumably due to Roe's struggling, Coe stopped his efforts and returned to his cot. *Id*. at 127. Coe said, "I am glad this white boy didn't go home today." *Id.* at 117; 126; 127. These events lasted a minute or less. *Id.* at 117; 123-4. Afterwards, Roe experienced pain and some minor bleeding from his butt. *Id.* at 128; 130-1.

The following morning, Roe sought out a female supervisor, Theresa Warren, whom he felt comfortable talking to and reported the incident. *Roe Deposition* at 138-39. Ms. Warren immediately took Roe to the nurse's office and alerted his probation officer, Austin Kennedy. *Id*. at 139. Kennedy arranged for Roe to call his girlfriend and then drove Roe home to be with

---

[1] Defendant Mahoning County argues that it is not responsible for implementing the policies or procedures of the JJC and it does not control the daily activities of the JJC. ECF Dkt. #40. There is no dispute that the JJC is located in Mahoning County.

his parents. *Id.* at 131. Following the visit with his mother, Kennedy took Roe to St. Elizabeth's Hospital for medical treatment. *Id.* at 144.

On February 25, 2005, Plaintiffs filed the instant action against Defendants Eva Burris, Smith, and Kennedy (collectively "JJC Defendants"), individually and in their official capacities, and Mahoning County, Ohio ("Mahoning County"), alleging violations of 42 U.S.C. § 1983, negligence, loss of consortium and parental responsibility.[2] ECF Dkt. #1. On April 19, 2005, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #15. On May 12, 2005, JJC Defendants and Mahoning County filed answers. ECF Dkt. #s 26-27. On August 15, 2005, Defendants filed a joint motion to consolidate this case with the related case, number 4:05CV1528.[3] ECF Dkt. #29. On September 6, 2005, the undersigned granted the motion and consolidated the cases. ECF Dkt. #30. On May 5, 2006, Defendants Mahoning County and JJC Defendants filed separate motions for summary judgment. ECF Dkt. #40, 42. On August 21, 2006, Plaintiffs filed motions in opposition. ECF Dkt. #s 57-58. On August 25, 2006, Defendant Mahoning County filed a reply. ECF Dkt. #59. On August 28, 2006, JJC Defendants filed a reply. ECF Dkt. #60.

**B.    STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions

---

[2]   The Complaint also names John Does 1 through 11. No service, however, has been perfected against these Defendants, nor have they been identified. Accordingly, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, John Does 1 through 11 are **DISMISSED** as Defendants.

[3]   Both cases name the same person as perpetrator and have substantially the same Defendants. *See Roe v. Mahoning County, et al.*, 4:05CV1528 (N.D. Ohio 2005). Both cases also have similar procedural histories. *Id.*

and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he bears the ultimate burden of proof at trial. *See id.; Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his position. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex Corp.*, 477 U.S. at 322.

**C.      ANALYSIS**

JJC Defendants argue that they did not violate Plaintiffs' civil rights and specifically that they had no knowledge of a substantial risk of serious harm to Roe. ECF Dkt. #42. Further, JJC Defendants argue that in so far as they are sued in their individual capacities, they are shielded by the doctrine of qualified immunity. *Id.* Mahoning County argues that it is not responsible for the daily operations at the JJC. ECF Dkt. #40.

42 U.S.C. § 1983 provides a cause of action against any person, who, under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws."[4]  42 U.S.C. § 1983. In order to prevail in a Section 1983 action against a government official, a plaintiff must overcome qualified immunity by establishing that the official violated a "clearly established" constitutional right and "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Consequently, a plaintiff opposing qualified immunity must answer this threshold question: whether the facts, taken in the light most favorable to the plaintiff, demonstrate that an official's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 198 (2001); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003). If no constitutional right would have been violated

---

[4]      Defendants do not challenge the "color of law" element. ECF Dkt. #42 at 10. Instead, they argue that Defendants did not violate Roe's civil rights. *Id.*

were the allegations established, the Court must terminate the qualified immunity inquiry and dismiss the suit. *See Saucier*, 533 U.S. at 198.

Accordingly, the Court shall first determine whether Plaintiffs have presented sufficient facts to demonstrate that the individual defendants' conduct violated Roe's constitutional rights. Plaintiffs argue that each Defendant "knew Johnny Roe faced a substantial risk of serious harm from predatory inmates[,]" and failed to protect and separate him from other juveniles. ECF Dkt. #1 at 7. Specifically, Plaintiffs assert that Defendants Smith, Burress and Mahoning County were "responsible for the policies and practices, including classification and cell assignment, that led to the assault and rape of Johnny Roe." ECF Dkt. #1 at 7.

The Eighth Amendment imposes a duty upon prison officials to protect prisoners in custody from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Pretrial detainees are analogously protected under the Due Process Clause. *See Bell v. Wolfish,* 441 U.S. 520, 545 (1979). To prevail on a claim of failure to protect under the Eighth Amendment, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials subjectively knew of and disregarded that safety risk. *Farmer*, 511 U.S. at 834, 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Further, a prison official may not escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific

prisoner who eventually committed the assault. *Lopez v. LeMaster*, 172 F.3d 756, 762 n. 5 (9thCir. 1999) (quoting *Farmer*).

Based upon the facts presented, Plaintiffs have not shown that Roe was "incarcerated under conditions posing a substantial risk of serious harm," or that the Defendants subjectively knew of and disregarded that safety risk. *See Farmer, supra*. JJC Defendants have provided deposition testimony from Plaintiffs as well as affidavits indicating that none of the individual Defendants knew of or disregarded a substantial risk of serious harm to Roe nor did they improperly house him with Coe. Knowledge of the asserted safety risk or circumstances clearly indicating the existence of such risk is essential to a finding of deliberate indifference. *See Farmer*, 511 U.S. at 834, 837. Defendant Smith, the Director of Detention at the JJC at the time of the incident, explained that there were procedures in place to obtain information regarding a juvenile's past behavior regarding crimes of violence or giving and/or taking physical or sexual abuse. ECF Dkt. #42, Attachment #2 ("Smith Affidavit") at ¶ 5. Defendant Smith also indicated that if a juvenile had previously committed a crime of violence or a sexually oriented crime, then that juvenile would be housed in an isolation unit away from the general population. *Id.* at ¶ 6. Further, Defendant Smith averred that at the time of the incident, neither he nor any of the JJC staff had any knowledge or information that caused them to believe that placing Roe and Coe together caused a substantial risk of harm to Roe. *Id.* at ¶ 11. Further, they had no knowledge that Coe was capable of committing a violent crime, let alone a sexually oriented crime. *Id.* at ¶ 12. Even more damaging to Plaintiff's case is that Coe, while housed at the JJC previous to this incident with Roe, never had any problems with his cell mates before, thus giving the JJC staff no indication that he was likely to pose a substantial risk of harm to Roe. *Id.* Defendant Burris,

the Court Administrator for the JJC, has stated the same. ECF Dkt. #42, Attachment #3 ("Burris Affidavit").

Additionally, JJC Defendants point to the deposition testimony of Roe to support their argument. Roe indicated under oath that he was not aware of any threat of harm to himself by being housed with Coe. *Roe Deposition* at 100-02; 108-111; 142-3. And Roe indicated that he had never heard of anything that gave him pause regarding Coe. *Id.* at 100-03. Further, Roe denies expressing any kind of fear or discomfort of any sort regarding his cell assignment to anyone on the JJC staff. *Id.* at 111. Also, when Roe was incarcerated at the JJC previously, Roe did not have any problems with other juveniles. *Id.* at 70-1.

Plaintiffs, for their part assert that JJC Defendants failed to take reasonable precautions in allowing unsupervised inmates with a history of sexual assault on other JJC detainees unfettered access to detainees. ECF Dkt. #58 at 6. The nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *Stein v. Kent State Univ. Bd. of Trustees*, 994 F. Supp. 898, 906 (D. Ohio 1998); *Sherman v. American Cyanamid Co.*, 996 F. Supp. 719, 722 (D. Ohio 1998). And it is the plaintiff who must ultimately shoulder the burden of proof to establish that a defendant is not entitled to qualified immunity. *See Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991). However, Plaintiffs have failed to point the Court to any evidence whatsoever that Defendants improperly placed Roe in a cell assignment with Coe, that they knew or should have know of the potential danger to Roe, that Roe knew of any danger or tried to communicate his fear from being housed with Coe, or that Defendants failed to take reasonable precautions to prevent the attack or that they acted improperly upon learning of the attack.

Moreover, as to Defendants Smith and Burris, there are no facts to support a claim against them as supervisors. In order to establish liability under §1983, the plaintiff must prove that "the defendant, as a supervisory official, was personally responsible for the alleged unconstitutional actions that caused his injury." *See Mills v. City of Barbourville,* 389 F.3d 568, 580 (6th Cir. 2004) (citing *Bellamy,* 729 F.2d at 421). Liability under §1983 cannot be imposed merely because of the supervisory position which a supervisor holds. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984). At a minimum, in order to find a supervisor liable under §1983, a plaintiff must allege that he or she "condoned, encouraged, or knowingly acquiesced in the alleged misconduct." *Id.* Section 1983 liability must be based upon more than just the right of a supervisor to control his or her employees. *Id.* In addition, when suing a defendant in his or her individual capacity, the plaintiff must allege the personal involvement of the defendants in causing his injury. *Carrion v. Wilkinson*, 309 F.Supp.2d 1007, 1013-14 (N.D.Ohio, 2004) (citing *Hardin v. Straub,* 954 F.2d 1193, 1196 (6th Cir.1992)). Plaintiffs fail to meet these burdens. Defendants Smith and Burris have averred that they did not know that housing Roe and Coe together would pose a substantial risk of harm to Roe. Plaintiffs have not rebutted these assertions nor are there facts in the record to support a finding that either Defendant Smith or Burris condoned, encourage or knowingly acquiesced in the misconduct.

As to Defendant Kennedy, Defendants argue that there is no evidence in the record to support a claim against him. ECF Dkt. #42 at 16. The undersigned agrees. As a probation officer, Kennedy has no role in the admissions, cell assignment or operation of the JJC, nor do Plaintiffs point to any actions by Kennedy that amount to negligence, let alone deliberate indifference. *See* ECF Dkt. 58. Roe was in the JJC due to his own actions and the decision of

9

his parents. *See* ECF Dkt. #42, Attachment 1; ECF Dkt. #45 at 45-48, 51-53. The only actions taken by Defendant Kennedy were in response to being told of the incident with Coe and were entirely appropriate given the situation. Accordingly, the undersigned finds no facts that would allow a jury to find for Plaintiffs regarding any of the claims against Defendant Kennedy.

Based on the foregoing, there is no dispute as to any material fact and no evidence that would allow a jury to find that JJC Defendants knew of or disregarded a substantial risk of serious harm to Roe. Accordingly, qualified immunity attaches and all claims against JJC Defendants in their individual capacities are dismissed. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (explaining that if no constitutional right had been violated even if all of Plaintiff's allegations are true, then qualified immunity applies). Further, as Plaintiffs have failed to meet their reciprocal burden on summary judgment and there are no facts to support their theory of liability, JJC Defendants, in their official capacity are also dismissed. Finally, since there is no constitutional violation here, there is no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that for municipal liability to exist, a constitutional violation must take place); *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002). Accordingly, Defendant Mahoning County is entitled to summary judgment with respect to Plaintiffs' municipal liability claim.[5]

The remaining claims contained in the Complaint assert violations of Ohio law against all Defendants, including Defendants John and Jane Coe as parents of Jimmy Coe. ECF Dkt. #1. As the Court has dismissed all of the federal claims alleged against JJC Defendants and

---

[5] The Court recognizes that Defendant Mahoning County has filed its own brief for summary judgment; However, for the reasons state above, that motion is now MOOT. ECF Dkt. #40.

Defendant Mahoning County, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims asserted in the Complaint.  *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).  Accordingly, Plaintiffs' remaining state law claims are **DISMISSED** without prejudice.

**D.** **CONCLUSION**

Based upon the foregoing, the undersigned GRANTS the motion of Defendants Eva Burris, Rollen Smith, and Austin Kennedy for summary judgment and DISMISSES the claims against them as well as the claims against Defendant Mahoning County with prejudice.  Further, the undersigned declines to exercise jurisdiction over the remaining state law claims and thus, dismisses the claims of negligence, loss of consortium and parental liability against all Defendants without prejudice.  Also, based on the foregoing, the motion for summary judgment filed by Defendant Mahoning County is DENIED as MOOT.  ECF Dkt. #s 40, 42.

IT IS SO ORDERED.

SIGNED and ENTERED on this 26th  day of September, 2006.

                                              */s/George J. Limbert*
                                              GEORGE J. LIMBERT
                                              United States Magistrate Judge